UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SUSANNE J. FRONCZKIEWICZ,

        Plaintiff,

   v.

MAGELLAN HEALTH SERVICES,
INC., ICORE HEALTHCARE,
MICHAEL SZWAJKOS, MARCIE L.
BANDA, and JAMES P. LAREWETH,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-7542
(JEI/AMD)

**OPINION**

**APPEARANCES:**

FOLKMAN LAW OFFICES, P.C.
By:  Heidi R. Kopelson
1949 Berlin Road, Suite 100
Cherry Hill, NJ 08003
        Counsel for Plaintiff

FOX ROTHSCHILD LLP
By: Catherine T. Barbieri
Erin T. Fitzgerald
2000 Market Street, 20th Floor
Philadelphia, PA 19103
        Counsel for Defendants

**IRENAS**, Senior District Judge:

    This employment discrimination suit, alleging violations of

the New Jersey Law Against Discrimination ("LAD"), the

Conscientious Employee Protection Act ("CEPA"), and the common

law tort of defamation, comes before the Court on Defendants'

motion to dismiss all claims against the individually named

Defendants and one of the claims against Defendants Magellan and

1

ICORE (Dkt. No. 5).[1]  For the reasons set forth below, the motion is granted.

## I.

The following is alleged in the Complaint.  Plaintiff Fronczkiewicz was hired by Defendant ICORE Healthcare ("ICORE") as a clinical liaison in March of 2005.[2]  Compl. ¶ 7.  Plaintiff suffers from Type 1 diabetes.  Compl. ¶ 19.  After nearly five years of incident-free employment, Plaintiff took four months maternity leave pursuant to the Family Medical Leave Act.  Compl. ¶ 19.

On November 19, 2010, five months after returning to work, Plaintiff's supervisor, Defendant Szwajkos, accused Plaintiff of falsifying calls to clients and entering inaccurate information into the company's record-keeping database.  Compl. ¶ 8.  The accusations were made during a conference call between Plaintiff, Szwajkos, and Defendant Lareweth, Szwajkos's supervisor.

A follow-up call was held on November 23, 2010 with Plaintiff, Szwajkos, and a member of human resources, Defendant Banda, to address the allegations and give Plaintiff an opportunity to "present [her] case."  Compl. ¶¶ 10-13.  The parties discussed that while there were errors in Szwajkos's

--------

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

[2] ICORE is a subsidiary of Defendant Magellan Health Services, Inc. ("Magellan").

report, Plaintiff's record keeping was insufficient. Compl. ¶ 16. "[A]n agreement was also reached wherein Plaintiff and Defendant Szwajkos were to have weekly teleconferences to review Plaintiff's performance so that Defedant Swajkos could provide coaching" on how to improve. Compl. ¶ 16.

During one such teleconference, on December 15, 2010, Swajkos informed Plaintiff that she was not meeting expectations and issued her a written warning for failing to do so. Compl. ¶ 18. The warning cited several deficiencies in Plaintiff's work over the previous three months. Compl. Ex. E. Plaintiff again responded via email, refuting the attacks on her work and repeatedly objecting to Szwajkos's "per se libelous and defamatory" statements. *See, e.g.*, Compl. ¶ 20 ("The issuance of the Written Warning is clearly retaliation for (1) my objecting to his previous per se libelous and defamatory statements (i.e., falsification of company records) and (2) objecting to his libelous and defamatory claims of performance failures.").[3]

Plaintiff also requested that she discontinue reporting to Defendant Szwajkos because of her "discomfort with [him]." Compl. ¶ 19. Defendant Banda responded that as a clinical liaison, Plaintiff must report to Szwajkos. Compl. ¶ 22.

---

[3] In her email to Defendant Banda, Plaintiff includes, among other allegations, "If I am being issued a written warning for failure to meet goals while on FMLA/Maternity Leave/NJ FMLA, it seems to me that I am being punished for exercising my right to take leave." Compl. ¶ 19.

On December 22, 2010, another teleconference was held with the individual Defendants and Plaintiff. Compl. ¶ 24. Plaintiff was told that she could not discuss her review with anyone, that she could no longer comment or question the substance of the written warning, and that if she failed to obey she would lose her job. Compl. ¶ 24. Plaintiff signed the written warning with a notation that she had done so under protest and disagreed with its contents. *Id.* No further correspondence occurred.

On January 3, 2011, Plaintiff began a voluntary and indefinite leave of absence, prompted by her doctor's prescription of rest. Compl. ¶ 26. Plaintiff would not return to ICORE. At an unspecified point during her leave, Plaintiff received a letter indicating that she had already "used 12 weeks of FMLA during the past 12 months" and that consequently ICORE "may begin the process to fill" her former position. Compl. Exh. G. Plaintiff then sought assurances from Defendant Banda that her position was protected as she filled out the requisite paperwork to request additional time off. Compl. ¶ 28-33. Plaintiff received none, and on February 9, 2011, Defendant Banda advised Plaintiff that her request for time off had been denied because holding her position open would "constitute an undue burden on Magellan/ICORE" and that the company was planning on filling her vacated position. Compl. ¶ 38. Plaintiff responded that she would take appropriate action and filed suit in Superior

Court of New Jersey, Camden County, on October 31, 2011.  Compl.
¶ 39.  Defendants timely removed, and now submit the instant
motion.

### II.

Federal Rule of Civil Procedure 12(b)(6) provides that a
defendant may move to dismiss a complaint "for failure to state a
claim upon which relief can be granted."  In order to survive
such a motion, a complaint must allege facts that raise a
plaintiff's right to relief above the speculative level.  *Bell
Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).  A court
must accept as true all of the complaint's allegations and view
them in the light most favorable to the plaintiff.  *Phillips v.
County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  The
factual matter contained therein must show that the accompanying
legal accusations are not only possible but plausible.  *Id.* at
234.

### III.

Defendants seek dismissal of the following claims:
Plaintiff's NJ LAD claim against the individually named
defendants; her CEPA claim against all Defendants; and her
defamation claim against Defendant Szwajkos.[4]  Each claim is
handled in turn.

---

[4] Defendants do not move to dismiss Plaintiff's LAD claim
against Defendants Magellan and ICORE.  Defs.'s Mot. 1.

**A. LAD**

Plaintiff alleges that Defendants discriminated against her on the basis of her disability, Type 1 diabetes, in violation of the New Jersey Law Against Discrimination.  The discriminatory conduct underlying Plaintiff's claim is the refusal of two reasonable accommodation requests: a request to cease reporting to Szwajkos and a request for additional time off.[5]  Compl. ¶ 45.  Because the LAD only holds employers liable for such discriminatory acts, *Chicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 591 (2008), Plaintiff seeks to impose liability on her supervisors, the individually named Defendants, by arguing that they "aided and abetted" ICORE's underlying discrimination.  Pl.'s Br. 3-4.

Under LAD, however, aiding and abetting liability can only be applied to supervisors who aid and abet another employee's harassment.  *Seibert v. Newsome*, 2012 U.S. Dist. LEXIS 42708 (D.N.J.)(dismissing a LAD claim because none of the "individual supervisor-defendants is accused of standing by while persons in their employ engaged in unlawful, discriminatory conduct"); *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (1999) (holding that aiding and abetting liability under LAD may lie for

---

[5] *See Victor v. State*, 203 N.J. 383, 421 (2010) (allowing plaintiffs "to proceed against employers who have failed to reasonably accommodate their disabilities or who have failed to engage in an interactive process even if they can point to no adverse employment consequence that resulted").

"harm resulting to a third person from the conduct of another")
(quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 (3d Cir.
1998).[6]  Because Plaintiff fails to allege that her supervisors
aided and abetted harassing conduct by any other employee, her
theory of liability under LAD must fail.

**B. CEPA**

Plaintiff alleges that Defendants violated New Jersey's
Conscientious Employee Protection Act when it issued her a
written warning and terminated her employment.  Pl.'s Br. 18-19.
As shown below, Plaintiff fails to articulate a cognizable claim.

CEPA prohibits a New Jersey employer from taking
"retaliatory action" against an employee who objects to "any
activity, policy or practice which the employee reasonably
believes" is in violation of applicable law.  N.J.S.A.
34:19-3(c)(1); *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d
398, 404-05 (3d Cir. 2007).  To defeat a motion to dismiss, a
plaintiff must plead that (1) she reasonably believed that her
employer's conduct violated a law or rule or regulation

---

[6] Plaintiff's citing of *US v. Sain*, 141 F.3d 463 (3d Cir.
1998), wherein the Third Circuit held that under the Major Fraud
Act of 1988, 18 U.S.C. § 1031, an individual can be held to have
aided and abetted a corporation he fully controls, does not save
her claim.  Not only is that holding limited by the court's
analysis of the Major Fraud Act, but the Third Circuit clarified
the requirements of supervisory aiding and abetting liability in
*Hurley*, decided one year after *Sain* and in which *Sain* is cited.
The *Hurley* court reaffirmed that supervisory liability can only
lie when the supervisor "flouts" his duty to act against another
emplyoee's harassment.  *Hurley*, 174 F.3d at 126.

promulgated pursuant to law; (2) she objected to the conduct
(commonly referred to as whistle-blowing); (3) an adverse
employment action was taken against her; and (4) a causal
connection exists between the whistleblowing activity and the
adverse employment action.[7]  *Dzwonar v. McDevitt*, 177 N.J. 451,
462 (2003).

Plaintiff posits two separate claims: Plaintiff objected to
Szwajkos's allegedly defamatory remarks and was issued a written
warning for doing so; and her employment was terminated because
of her objection to being issued a written warning in retaliation
for taking FMLA leave.  Pl.'s Opp. Br. at 18.

As to Plaintiff's first contention, the Court finds that
Plaintiff's claim fails to allege the second prong articulated
above, namely that she objected to ICORE action that violated a
law or rule or regulation promulgated pursuant to law.  CEPA was
"designed to provide broad protections against employer
retaliation for employees acting within the public interest."
*Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 418
(1994).  Plaintiff's repeated objections to Szwajkos's comments
that she filed inaccurate information into the company's database

---

[7] Because Plaintiff's claim is based on circumstantial
evidence, the Court applies the three-step, burden-shifting
analysis established in *McDonnell Douglas Corp. v. Green*, 411
U.S. 792 (1973); *see also Scull v. Wackenhut Corp.*, 2012 U.S.
Dist. LEXIS 72447 * 21 (D.N.J.).  However, because Plaintiff
fails to allege a prima facie claim under either theory, the
Court does not move beyond the first step.

does not constitute conduct undertaken in the public's interest. Rather, Plaintiff's objections appear to be nothing more than a spirited refutation of the content of Szwajkos's allegations. Because CEPA does not protect employees who simply disagree with a supervisor's lawful conduct, *see Young v. Schering Corp.*, 275 N.J. Super. 221 (App. Div. 1994), this theory of liability must be dismissed.

As to Plaintiff's second iteration, Plaintiff fails to plausibly allege that her termination was causally connected to her objection that she was being issued a written warning for taking FMLA leave. As stated in Section I, Plaintiff wrote in one her emails to Defendants, "If I am being issued a written warning for failure to meet goals while on FMLA/Maternity Leave/NJ FMLA, it seems to me that I am being punished for exercising my right to take leave." Compl. ¶ 19. Assuming, *arguendo*, that such a statement is protected activity, Plaintiff does not sufficiently plead that it was causally linked to her termination.

To plead causal connection, a plaintiff must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) temporal proximity plus some additional evidence of causation. *Bowles v. City of Camden*, 993 F. Supp. 255, 263-64 (D.N.J. 1998). Plaintiff's termination, occurring the following year during

either January or February, was not unusually temporally proximate to her email objecting to the written warning. Furthermore, Plaintiff does not point to any "additional evidence of causation." In fact, Plaintiff's own Complaint shows that Plaintiff's termination only came about when she took a voluntary leave of absence, thereby exceeding the amount of leave afforded her under FMLA.

Because Plaintiff fails to plead a prima facie claim in violation of CEPA, her claim is dismissed.

## C. DEFAMATION

Plaintiff alleges that Defendant Szwajkos defamed her during the November 19, 2010 teleconference when he accused her of inflating her mileage calculations and entering inaccurate data reports. Compl. ¶ 51. Although Plaintiff alleges a prima facie case of defamation, Szwajkos's utterance of the underlying statement was protected. Consequently, Plaintiff's claim must be dismissed.

"Defamation imposes liability for publication of false statements that injure the reputation of another." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 765 (1989) (citing *Maressa v. N.J. Monthly*, 89 N.J. 176, 190 (1982)). "In order to establish a prima facie case of defamation ... a plaintiff must show that defendant communicated to a third person a false statement about plaintiff that tended to harm [the]

plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff." *W.J.A. v. DA.*, 416 N.J.Super. 380, 384-85 (App.Div.2010) (quoting *McLaughlin v. Rosanio*, 331 N.J.Super. 303, 312 (App.Div.2000)).

Not every defamatory statement, however, gives rise to an actionable claim. Under New Jersey common law, the speaker of a defamatory statement will be protected if the speaking underlying the claim is privileged. *Govito v. West Jersey Health System, Inc.*, 332 N.J. Super. 293, 305-306 (2000). One such privilege, referred to as the *Bainhauer* privilege, protects statements uttered by private individuals in order to freely "express private concerns to a limited and correlatively concerned audience."[8] *Bainhauer v. Manoukian*, 215 N.J. Super. 9, 36 (1987). Specifically, the communication is privileged if made "upon any subject-matter in which the party communicating has an interest" and the recipient has "a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable." *Coleman v. Newark Morning Ledger Co.*, 29 N.J. 357, 375, 149 A.2d 193 (1959).

Plaintiff alleges that Defendant Szwajkos defamed her by accusing her of falsifying company records while Defendant Lareweth was on the line. Pl.'s Br. 22. The factual matter

---

[8] The *Bainhauer* privilege is also referred to as the conditional special-interest privilege. *See, Govito*, 332 N.J. Super. at 293.

11

alleged by Plaintiff clearly indicates that such communication was privileged.  Szwajkos made his statements only within the auditory presence of one other individual, Defendant Lareweth, a supervisor to both Szwajkos and Plaintiff, concerning a matter germane to all three individuals: the accuracy of information Plaintiff entered into ICORE's database.  Because Szwajkos was privileged in making this statement, Plaintiff's defamation claim must be dismissed.

## IV.

For the foregoing reasons, the following claims are dismissed: Plaintiff's LAD claim against the individually named defendants; her CEPA claim against all Defendants; and her defamation claim against Defendant Szwajkos.  Plaintiff's LAD claim against Defendants Magellan and ICORE remains.  An Order will accompany this Opinion.

DATED:  6/20/12

_____
Joseph E. Irenas, S.U.S.D.J.